# APPEAL CASE NO: 16-11403

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

OFFICER NICOLO MANGIARACINA, individually
and as a member of St. Petersburg Police Department;
OFFICER JUSTIN MORALES, individually
and as a member of St. Petersburg Police Department;
OFFICER MICHAEL ROMANO, individually and as
a member of the St. Petersburg Police Department;
CHIEF ANTHONY HOLLOWAY,
St. Petersburg Police Department Chief,
in his official capacity,
CITY OF ST. PETERSBURG d/b/a
CITY OF ST. PETERSBURG POLICE DEPARTMENT,

      Appellants/Defendants,

 vs.

BRANDY WALLACE, as the Personal Representative
of the Estate of Ronald Wesley Sexton,

      Appellee/Plaintiff,

_____/

## ON APPEAL FROM THE DISTRICT COURT OF
## THE MIDDLE DISTRICT OF FLORIDA

_____

## APPELLANTS' INITIAL BRIEF
_____

Respectfully submitted,

JOSEPH P. PATNER, ESQUIRE
Assistant City Attorney
Florida Bar No.: 831557
OFFICE OF THE CITY ATTORNEY
FOR THE CITY OF ST. PETERSBURG
P. O. Box 2842
St. Petersburg, Florida 33731
(727) 893-7401, Fax: (727) 892-5262
Joseph.Patner@stpete.org
eservice@stpete.org

APPEAL NO. 16-11403

## CERTIFICATE OF INTERESTED PERSONS

I hereby certify that the following persons may have an interest in the outcome of this case:

1.    Brandy Wallace, as the Personal Representative of the Estate of Ronald Wesley Sexton, Plaintiff/Appellee

2.    Michael P. Maddux, Attorney for Plaintiff/Appellee

3.    Jennifer M. Salter, Attorney for Plaintiff/Appellee

4.    Officer Nicolo Mangiaracina, Defendant/Appellant

5.    Officer Justin Morales, Defendant/Appellant

6.    Officer Michael Romano, Defendant/Appellant

7.    Chief Anthony Holloway, Defendant/Appellant

8.    City of St. Petersburg, Defendant/Appellant

9.    Joseph P. Patner, Attorney for Defendants/Appellants

10.    Susan C. Bucklew, United States District Judge

## CORPORATE DISCLOSURE STATEMENT

There are no publicly traded corporations that have an interest in the outcome of this case.

/s/ Joseph P. Patner
JOSEPH P. PATNER
Assistant City Attorney

i

APPEAL NO. 16-11403

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendants request oral argument.

APPEAL NO. 16-11403

# TABLE OF CONTENTS

Certificate of Interested Persons/Corporate Disclosure Statement.................. i

Statement Regarding Oral Argument.................................................................. ii

Table of Contents............................................................................................. iii

Table of Citations .......................................................................................... v

Statement of Jurisdiction.................................................................................. 1

Statement of Issue Presented for Appeal ........................................................ 2

Statement of the Case

        Nature of the Case ....................................................................... 3

        Course of the Proceedings and Disposition Below ...................... 3

Statement of Facts.......................................................................................... 4

Summary of Argument...................................................................................... 12

Argument

    Standards of Review

    I.      No Genuine Issue of Material Fact........................................... 13

    II.     Qualified Immunity.................................................................. 18

APPEAL CASE NO: 16-11403

Conclusion ........................................................................................ 24

Certificate of Compliance with Rule 32(a) ...................................... 26

Certificate of Electronic Filing ....................................................... 26

Certificate of Service ...................................................................... 27

APPEAL CASE NO: 16-11403

# TABLE OF CITATIONS

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)....................................................................13, 15, 16, 17

*Behrens v. Pelletier*
516 U.S. 299 (1996).....................................................................3

*Buckley v Haddock*
292 Fed. Appx. 791, 2008 WL 414297 (11th Cir. 2009) ...........3

*Chadwick v. Bank of America*
616 Fed.Appx. 944 n.3 (11th Cir. 2015) .....................................17

*Chapman v. AI Trans.*
229 F.3d 1012, 1023 (11th Cir. 2000) ........................................16

*Dalrymple v. Reno*
334 F.3d 991, 994 (11th Cir. 2003) ............................................18

*Durruthy v. Pastor*
351 F.3d 1080, 1087 (11th Cir. 2003)..........................................19

*Evans v. Stephens*
407 F.3d 1272, 1278 (11th Cir. 2005) ........................................14, 15

*Garczynski v. Bradshaw*
573 F.3d 1158 (11th Cir. 2009)...................................................23

*Graham v. Connor*
490 U.S. 386, 395 (1989) ...........................................................20, 21, 23

*Gray ex rel. Alexander v. Bostic*
458 F.3d 1295, 1303 (11th Cir. 2006)..........................................18

v

APPEAL CASE NO: 16-11403

*Harbert Int'l, Inc. v. James*
157 F.3d 1271, 1282 (11th Cir. 1998) ........................................ 19

*Hope v. Pelzer*
536 U.S. 730 at 739, 122 S.Ct. 2508, 153 L. Ed. 2d 666 (2002) ..... 18

*Hunter v. Bryant*
502 U.S. 224, 227 (1991) ............................................................ 19

*Kenning v. Carli*
2016 WL 1534002 (11th Cir. 2016) ........................................... 16

*Kesinger ex rel. Estate of Kesinger v. Herrington*
381 F.3d 1243 (11th Cir. 2004) .................................................. 17

*Lee v. Ferraro*
284 F.3d 1188, 1194 (11th Cir. 2002) ........................................ 19

*Lenning v. Brantley County, Ga.*
579 Fed.Appx. 727 (11th Cir. 2014) .......................................... 22

*McCullough v. Antolini*
559 F.3d 1201 (11th Cir. 2009) .................................................. 24

*McDaniel v. Woodard*
885 F.2d 311, 313 (11th Cir. 1989) ............................................ 24

*McMillian v. Johnson*
88 F 3d 1554, 1563 (11th Cir. 1996) ........................................... 1

*Mitchell v. Forsyth*
472 U.S. 501, 530 (1985) ....................................................... 1, 19

*Penley v. Eslinger*
605 F. 3d 843 (11th Cir. 2010) .................................................. 21

APPEAL CASE NO: 16-11403

*Quiles v. City of Tampa Police Dept.*
596 Fed.Appx. 816 (11th Cir. 2015) ...........................................23

*Riley v. City of Montgomery, Alabama*
104 F.3d 1247, 1251 (11th Cir. 1997) .......................................16

*Riordan v. O'Shea*
*448 Fed. Appx 928* (11th Cir. 2011)...........................................15, 20, 21

*Scott v. Harris*
550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)....14, 19

*Taylor v. Taylor*
2016 WL 1743965 n.4 (11th Cir. 2016) ....................................16

*Torjagbo v. U.S.*
285 Fed. Appx. 615, 619 (11th Cir. 2008)..................................16

*Williams v. Alabama State Univ.*
102 F.3d 1179, 1182  (11th Cir. 1997) ........................................13

*Willis v. Mock*
600 Fed. Appx. 679, 681 (11th Cir. 2015)..................................14

Federal Statutes

28 U.S.C. §1291........................................................................1, 2, 3
42 U.S.C. §1983........................................................................1, 3, 12

Federal Rules

Fed. R. App. P. 32(a)(5)..............................................................26
Fed. R. App. P. 32(a)(6)..............................................................26
Fed. R. App. P. 32(a)(7)(B) ........................................................26
Fed. R. App. P. 32(a)(7)(B)(iii) ..................................................26
Fed. R. App. P. 4.....................................................................1, 2

vii

APPEAL CASE NO: 16-11403

11th Circuit Local Rules

Fed. R. App. P. 28-5 ......................................................................1
Fed. R. App. P. 31-5 ....................................................................26

viii

APPEAL CASE NO: 16-11403

## STATEMENT OF JURISDICTION

**1.     Basis for subject matter jurisdiction in district and citations to  applicable statutory provisions.**

Jurisdiction vested in the United States District Court, Middle District of Florida  (Tampa Division), pursuant to Appellee's 42 U.S.C. §1983 Complaint against  the  Appellants, *inter alios*, alleging that the law enforcement officers engaged in excessive  force by shooting Decedent.

This Court has jurisdiction pursuant to 28 U.S.C. §1291, because the order on  appeal is the trial court's denial of a motion for summary judgment based upon the defense of qualified immunity. Denial of summary judgment on the issue of qualified  immunity is an appealable final decision notwithstanding absence of a final judgment.  Mitchell v. Forsyth, 472 U.S. 501, 530 (1985); McMillian v. Johnson, 88 F 3d 1554, 1563 (11th Cir. 1996).

The Order from which this appeal arises was entered by the District Court on  March 24, 2016.  (Doc 51[1]).  Appellants/Defendants filed their Notice of Interlocutory Appeal  on March 29, 2016 (Doc 55) which was timely filed under

---

[1] Pursuant to Eleventh Circuit Rule 28-5, references to the record on appeal will be made  by the designation "Doc", short for document, followed by the appropriate document  number, followed by the designation "pg.", followed by the respective  page number of the document or "para.", followed by the respective paragraph number (if necessary).

1

APPEAL CASE NO: 16-11403

Fed. R. App. P. 4.

### 2. Basis for jurisdiction of the Court of Appeals with citations to applicable statutory provisions and relevant filing dates.

This Court has jurisdiction pursuant to 28 U.S.C. §1291.

#### a. Final Order.

On March 24, 2016, the District Court entered an Order denying the Appellants' Motion for Summary Judgment. (Doc 51).

#### b. Other Jurisdictional Basis.

The Notice of Interlocutory Appeal was filed on March 29, 2016 (Doc 55) and was timely under Fed. R. App. P. 4.

### STATEMENT OF ISSUE PRESENTED FOR APPEAL

Whether the Appellants are entitled to qualified immunity on use-of-force claims made against them in their individual capacity as a result of their use of deadly force toward the Decedent plaintiff in this case, and whether the trial court erred in denying Appellants' motion seeking qualified immunity.

## STATEMENT OF THE CASE

### Nature of the Case

Appellants, Officer Nicolo Mangiaracina, Officer Justin Morales and Officer Michael Romano, seek interlocutory review of the District Court's Order denying Motion for Summary Judgment and entitlement to qualified immunity on those claims made against them in their individual capacity. Appellants' position is that this Order is immediately appealable pursuant to the provisions of 28 U.S.C. §1291 as a "collateral" order from which appeals are granted where a claim of qualified immunity has been denied before trial, since the denial of qualified immunity is a matter of law. See Buckley v Haddock, 292 Fed. Appx. 791, 2008 WL 414297 (11th Cir. 2009); Behrens v. Pelletier, 516 U.S. 299 (1996).

### Course of the Proceedings and Disposition Below

Brandy Wallace as personal representative for the estate of Ronald Sexton initiated proceedings against police officers Nicolo Mangiaracina, Justin Morales and Michael Romano, pursuant to 42 U.S.C §1983. Plaintiff alleges that the Defendant officers' use of deadly force was unreasonable and without justification and that such conduct caused the death of the Decedent. (Doc 8).

Defendant officers filed a Motion for Summary Judgment (Doc 37) which asserted the defense of qualified immunity. Plaintiff filed her response in

APPEAL NO. 16-11403

opposition to Defendants' Motion for Summary Judgment (Doc 42). The Defendants officers' Motion for Summary Judgment was denied. (Doc 51). The District Court found that based upon the affidavit of the Decedent's 10-year-old son, the officers used unreasonable force when "they shot the unarmed Decedent, who was attempting to comply with the officers' commands." (Doc 51, p. 8). The District Court found that this was a constitutional violation of a right clearly established, denying summary judgment. The officers filed a Notice of Interlocutory Appeal (Doc 55), the argument in support of which follows herein.

## STATEMENT OF FACTS

The facts show the Defendant police officers resorted to deadly force only when the Decedent pointed a loaded firearm at Officer Nicolo Mangiaracina.

In this case there are multiple police officers who were either personally involved in the shooting or whom witnessed Ronald Sexton point a firearm at Officer Nicolo Mangiaracina. Two civilian witnesses, neighbors to the Sextons, saw parts of the incident and heard other portions. The Decedent's son, Joshua Wallace, claims at times to have seen the shooting.

Prior to the subject incident, and unchallenged by the Plaintiff is the fact that the Decedent, Ronald Sexton, went to his neighbors' home, that of Cedric Warren, Andrea Robinson, and their three children, in the late night hours of September 2, 2013. Andrea Robinson heard dogs barking outside. Cedric Warren

4

APPEAL NO. 16-11403

went outside to investigate.  Cedric Warren returned screaming that Sexton was trying to get their dogs to fight.  When told to stop, Sexton pulled a gun on Cedric Warren.  (Doc 37-1, pg. 12:9-21).

At that time Brandy Wallace, Mr. Sexton's companion, came to the door of Andrea Robinson to apologize.  Brandy Wallace said Sexton had been drinking and they had been arguing. (Doc 37-1, pg. 25:18-22).  While Brandy Wallace was at the door apologizing, Sexton came up behind her with a gun out.  (Doc 37-1, pg. 19:13-16).

Andrea Robinson then called 911.  While speaking with the police, Sexton was at the front door "cocking" or "loading" the gun.  (Doc 37-1, pg. 20:10-15).  Shortly after Andrea Robinson called 911 the police arrived.  (Doc 37-1, pg. 27:3-10).  Upon arrival Robinson heard the police identify themselves to Sexton.  (Doc 37-1, pg. 37:15-19).  Robinson also heard the police yell "freeze".  (Doc 37-1, pg. 38:7-10).  Sometime after that she heard gunshots.  (Doc 37-1, pg. 38:11-14).  Andrea Robinson did not see the shooting.  (Doc 37-1, pg. 38:14-16).  Cedric Warren saw the police approach with guns drawn.  He could not see what Sexton did, nor hear what was said.  Mr. Warren could not see Sexton when he was on the porch, the location of the shooting.  (Doc 42-2, p. 14:2-5).

Nicolo Mangiaracina is a deputy with the Pinellas County Sheriff's Office.  At the time in question Officer Mangiaracina was a St. Petersburg Police

Department officer.  (Doc 37-2, pg. 4:16-22).  He left to be a helicopter pilot with the Sheriff's Department.  (Doc 37-2, pg. 4:23-24).  He began is law enforcement career in 2008, becoming a sworn officer in 2009.  (Doc 37-2, pg. 4:20-22).

On September 6, 2013, Officer Mangiaracina was on patrol when he received a dispatch call concerning a man with a gun.  (Doc 37-2, pg. 7:12-14; 9:17-19).  He responded to the scene where he met with other squad members.  A strategy meeting is held whereby the officers would maintain a strategic position called a "stack".  The first officer, Officer Claiber, is positioned holding a ballistics shield while the other officers were lined up behind the shield.  Officer Mangiaracina is armed with an AR-15.  (Doc 37-2, pg. 12:9-19; 11:21).

Contact is made with Sexton, who is on a lighted porch, talking on the phone.  As the officers moved closer they yelled to Sexton, "Police. Show me your hands.  Let me see your hands."  (Doc 37-2, pg. 13:17-21; 15:20-25).  Sexton turns to face Officer Mangiaracina with his hands in the air.  However, Sexton begins to reach with his right hand towards his right front pocket.  Officer Mangiaracina commanded him not to do that.  Sexton complied and put his hand up again.  (Doc 37-2, pg. 17:2-3)

Sexton is then directed to lay flat, prone on the porch.  Officer Mangiaracina is less than ten feet away, with Sexton's head facing towards the officer.  (Doc 37-2, pg. 17:16-25; 18:23-24; 21:3).  Officer Mangiaracina is no

APPEAL NO. 16-11403

longer behind the officer with the shield and does not have any cover.  (Doc 37-2, pg. 19:6-13).  The other officers positioned themselves in an "L" shape around Sexton.  (Doc 37-2, pg. 22:2-8).

Sexton looks at Officer Mangiaracina, then looks to the side, and lifts his body on his side.  Moving rapidly, Sexton puts his right hand in his right pocket and quickly pulls out a gun.  (Doc 37-2 pg. 23:9-14; 24:2-6).

Sexton fully pulls out the gun and points it at Officer Mangiaracina.  The officer is now looking at the barrel of the gun.  At that point Officer Mangiaracina fired.  The officer felt that his reaction to shoot was too slow, and he almost dies, since Sexton was able to level the barrel at him. (Doc 37-2, pg. 24:14-17; 23:11-14).  Officer Mangiaracina, facing a gun pointed at him, was in fear for his life. (Doc 37-2, pg. 26:19-23).

Defendant Justin Morales is a police officer with the St. Petersburg Police Department.  He has been a sworn officer since 2013.  He is a former Marine who had been deployed to Syria and Afghanistan.  Officer Morales was trained on the use of deadly force when it is encountered.  (Doc 37-3, pg. 3:23-24; 4:4-5; 7:18; 8:12; 57:6-9).

On September 2, 2013, Officer Morales was with Officer Claiber when a call of a man with a gun was put out by dispatch.  The call notes indicated that a man with a gun went to a neighbor's house, brandished the firearm and made

APPEAL NO. 16-11403

some type of threat like cocking the weapon. The suspect was described as a white male with a small black handgun in his right pocket. (Doc 37-3, pg. 22:9-24).

A tactical plan was discussed whereby Officer Mangiaracina would give verbal commands and Officer Claiber would carry the ballistics shield. The approach to the house would be made using shadows and vehicles for cover. (Doc 37-3, pg. 24:12-16). As Officer Morales approached the residence, Sexton was observed in the front of the house, talking on the phone. (Doc 37-3, pg. 28:11-18). Sexton was told to put his hands in the air and keep them in view. Then he was told to get on the ground. (Doc 37-3, pg. 33:14-21).

Sexton was on the ground, looking up. Officer Mangiaracina was yelling at Sexton to keep his hands up, but Sexton was not complying. Sexton starts to reach for his right pocket, while Officer Mangiaracina was yelling, "No, no, no; don't do that." (Doc 37-3, pg. 33:16-24; 37:3-9).

Sexton's son Joshua was on the porch earlier. He went back into the house prior to any commands being given to Sexton. (Doc 37-3, pg. 34:16-24; 35:20-22).

Sexton pulled a gun out of his right front pocket and pointed it at Officer Mangiaracina. (Doc 37-3, pg. 33:22-24). After Sexton pointed the gun at Officer Mangiaracina, the officers yelled "gun!". (Doc 37-3, pg. 48:10). Officer Morales

8

APPEAL NO. 16-11403

was in fear of an imminent threat of death or serious injury to Officer Mangiaracina. (Doc 37-3, pg. 57:10-20). At that point Officer Morales fired seven rounds of his thirteen round clip. (Doc 37-3, pg. 48:17-18; 49:8-9).

Officer Michael Romano is a member of the St. Petersburg Police Department. He has been an officer since 2007.

On September 2, 2013, Officer Romano was dispatched to a call of a man with a gun in a dispute with some neighbors. He was told it was a handgun being carried in the suspect's right front pocket. (Doc 37-5, pg. 11:2-10).

Upon arriving on the scene, Officer Romano approached Sexton in a tactical formation behind a ballistic shield. The goal of the encounter was, as always, to resolve the dispute without anyone getting hurt. (Doc 37-5, pg. 11:18-21).

Sexton is seen standing on the porch. A young child (later identified as Joshua Wallace) is seen coming on to the porch from the house. As the officers approach, the child runs in the house and slams the door. (Doc 37-5, pg. 16:14-16; 17:1-4).

Sexton lowers himself to the ground and the officers fanned out. (Doc 37-5, pg. 17:14-17).

Sexton then reaches into his right front pocket, pulls out a handgun, and begins raising it. At that point Officer Romano believes that Sexton is going to

9

APPEAL NO. 16-11403

shoot at his fellow officers, so Officer Romano fires one time.  Other gunfire occurred simultaneously.  (Doc 37-5, pg. 17:20-24; 18:1-2).

All of these events occurred "at light speed."  (Doc 37-5, pg. 30:10).

Officer Romano had no doubt that Sexton was going to use the gun to shoot an officer.  (Doc 37-5, pg. 30:11-18).

Sexton's gun was later identified as a 9mm.  It had six rounds in the clip and one live round in the chamber. (Doc 37-5, pg. 39:1-5).

Joshua Wallace was the ten-year-old son of Ronald Sexton.  The District Court found that directly after the shooting he was equivocal about whether he had actually seen the shooting. (Doc 51, p.6).  Two-and-a-half years later Joshua Wallace provides an affidavit whereby he claims to have witnessed the confrontation and the shooting of his father.  *Id.*

In the hours after the shooting Joshua states that his father pulled the gun out, dropped it and then kicked it away.  The officers then shot him for no reason. (Doc 37-4, pg. 2:2).

Joshua then changed his statement and admitted he did not see the shooting, he was running to get his mom when he heard gun shots. (Doc 37-4, pg. 4:18-24, 5:19).  This is consistent with the testimony of the officers who saw Joshua run inside as they approached.

Joshua asserts that he saw certain events through a window but then

10

APPEAL NO. 16-11403

changes this to say he was in his mom's room and he could "hear through the duct tape." This is consistent with the physical scene which had a window covered by duct tape that had been previously punched by Sexton. (Doc 37-4, pg. 10:5-10).

Joshua contradicts his statement of being at the window listening, by then stating he was halfway down a hallway, getting his mom when the shooting occurred. (Doc 37-4, pg. 12:14-25).

Joshua Wallace's admission that he did not see the shooting, in a statement given in the house after the shooting, is in accord with the statements of all the officers.

Two-and-a-half years later the Plaintiff has filed an affidavit from Joshua Wallace. (Doc 42-1). In it Joshua Wallace, using legal terminology, states that his initial interview is not an "accurate rendition". (Doc 42-1, para. 3).

Joshua makes internal inconsistencies in the affidavit and contradicts his earlier statements as well as the statements of every adult on the scene.

Joshua states his father never had a gun in his pocket nor did he display a gun to the neighbors. (Doc 42-1, para. 7-9). He later states now that he saw his dad kick the gun off the porch. (Doc 42-1, para. 13). He further states the police shot him as he was unarmed. (Doc 42-1, para. 17).

11

APPEAL NO. 16-11403

## Summary of Argument

The police officers have raised qualified immunity as a defense to Sexton's § 1983 claim against them.  It is the Plaintiff's burden to nullify that immunity, which is presumed, by demonstrating that under the circumstances of this case, no reasonable officer could have acted as the Defendants did.  Plaintiff has failed to do so.  The material facts show that the Defendant officers suddenly found themselves faced with a life-threatening situation.  An armed man, having been arguing with his girlfriend, threatening his neighbors, was now pointing a loaded 9mm at Officer Mangiaracina.  Any reasonable officer would have believed that resorting to deadly force to prevent the murder of a police officer was justified.

Plaintiff has only attempted to create a genuine issue of material fact through the use of an inconsistent affidavit of a child filed two-and-a-half years after he admitted he never saw the shooting and was thus not an eyewitness.  A court may disregard this "fiction" where the version of events is discredited by the record.  A court should not adopt an implausible or blatantly contradicted version of facts for purposes of ruling on a motion for summary judgment.

Nevertheless, the District Court denied the officers' qualified immunity by adopting the affidavit version of Joshua Wallace's testimony, essentially finding for purposes of the Motion for Summary Judgment that the officers murdered a helpless individual.

12

APPEAL NO. 16-11403

Under the plausible, substantiated material facts, there is no genuine material dispute and the officers are entitled to Qualified Immunity. The Motion for Summary Judgment should be granted and its denial reversed.

## ARGUMENT

### Standards of Review

This Court reviews *de novo* the District Court's Order denying qualified immunity. See *Williams v. Alabama State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997).

## I.    NO GENUINE ISSUE OF MATERIAL FACT

The District Court denied the officers qualified immunity because of a perceived genuine issue of material fact created by Joshua Wallace's affidavit that the officers shot an unarmed man. However, for purposes of summary judgment a fact is "material" only if it might affect the outcome of the case and it is "genuine" only if the record taken as a whole could lead a rational jury to find for the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As stated in *Anderson*, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." *Id.*

The District Court found that directly after the shooting "Joshua Wallace was equivocal about whether he had actually seen the shooting." (Doc 51, p. 6).

13

Two-and-a-half years later, in a highly technical affidavit, now twelve-years-old, Joshua Wallace claims to have witnessed the confrontation and shooting of his unarmed father.  *Id.*

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).  The Court may disregard "visible fiction" in cases where the opposing party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him."  *Id.* at 380-81.

Joshua Wallace's evidence must be credited unless contradicted by the record. *Willis v. Mock*, 600 Fed. Appx. 679, 681 (11th Cir. 2015).  Here, his testimony is contradicted and thus should not be credited.

A non-movant may not create a genuine issue of material fact by stitching together portions of favorable testimony and ignoring inconsistent statements. *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005).

As Judge Carnes stated in her concurrence in *Evans*, absent some extraordinary circumstance, no reasonable jury would believe a party is lying if he swears to something harmful to his case.  *Id.* at 1284.  Evidence is to be viewed in the non-movant's favor, but only to the extent that it would be reasonable for a

APPEAL NO. 16-11403

jury to resolve the factual issues in that regard.  To put it another way, no reasonable jury would believe Joshua Wallace is lying when he admitted he didn't see the shooting.  Since no reasonable jury would believe that he was lying (as opposed to the highly-technical self-serving affidavit), then the Court should view the evidence to resolve it in favor of Joshua Wallace's initial admissions that he was not a witness.

A plaintiff cannot defeat summary judgment by selectively emphasizing certain portions of testimony and disregarding contradicting parts.  *Id.* That is exactly what exists here.  Joshua, following his father's death at his home, either watched the shooting through the window; did not see the shooting but listened through duct tape on the window; or was in the hallway running to get his mom when the shooting occurred.  Only one of those three statements by a ten-year-old child would seemingly support the Plaintiff's position.  Further, the one of three child's stories conflicts with every adult and all physical evidence at the scene.

No reasonable jury could accept one of the contradictory statements of Joshua in the face of the opposing evidence and testimony.  If the testimony is too equivocal it cannot create a disputed fact.  *Riordan v. O'Shea, 448 Fed. Appx 928* (11th Cir. 2011)*, at 929 n. 2.  The mere existence of a scintilla of evidence in support of the Plaintiff's position is insufficient.  *Anderson v. Liberty Lobby,* 906 S. Ct. 2505, 2512 (1986).  The court must determine whether reasonable jurors

15

could find a preponderance of evidence that the Plaintiff is entitled to a verdict. *Id.* Here, there is no such evidence on the Plaintiff's behalf.

Courts are required to draw only "all reasonable inferences" in favor of the opposing party, not "all possible inferences." *Torjagbo v. U.S.*, 285 Fed. Appx. 615, 619 (11th Cir. 2008) (quoting *Chapman v. AI Trans.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

A case need not be allowed to go to a jury on the basis of the self-contradicted affidavit. See *Taylor v. Taylor*, 2016 WL 1743965 n.4 (11th Cir. 2016) (disregarding non-movant testimony when contradicted by dash-cam audio).

In *Kenning v. Carli*, 2016 WL 1534002 (11th Cir. 2016), this Court disregarded the plaintiff's proffered evidence given its "internal inconsistency" and the "entirely contradictory physical evidence" from which no reasonable jury could agree with the plaintiff's version of how a shooting occurred. Thus the defendants were entitled to qualified immunity.

The Plaintiff's versions of the facts resting solely on the self-contradicted prepared affidavit of Joshua Wallace are inherently inconsistent and inherently incredible. It is blatantly impeached by all other record evidence so that no reasonable jury could believe that these officers, for no reason put forth, decided to murder a complying and unarmed Ronald Sexton. See *Riley v. City of*

*Montgomery, Alabama*, 104 F.3d 1247, 1251 (11th Cir. 1997).

Self-serving testimony, such as that attributed to Joshua Wallace is insufficient to establish a genuine issue of fact. *Chadwick v. Bank of America*, 616 Fed.Appx. 944 n.3 (11th Cir. 2015).

*Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243 (11th Cir. 2004) is instructive. In *Kesinger* a witness provided testimony which, if accepted, would be the version most favorable to the non-moving party. However, it was in direct conflict with the "unanimous testimony of the other eye witnesses." *Id.* at 1249. Further, the witnesses' testimony is inconsistent with the initial statements that he made to the police. *Id.*

This Court determined that there was "no substantial evidence contrary to that of the testimony…" of the other four witnesses. "A mere scintilla of evidence in support of the non-movant is insufficient to defeat a motion for summary judgment." *Id* at 1249-50, citing to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The same result should be compelled here as well.

The Defendant officers were called to the scene by neighbors because Ronald Sexton had pulled a gun on them and cocked it. There is no evidence of animus from the officers to Sexton, nor evidence they even knew him. The officers approached Sexton who initially complied. Due to anger, poor judgment

17

or alcohol, Sexton pulled out his loaded 9mm (with one in the chamber, consistent with the neighbors' testimony) and pointed it at Officer Mangiaracina. By this time, ten-year-old Joshua Wallace was running to get his mother when he heard the shots, as he told the police. Every adult eyewitness and the physical evidence is consistent, as is Joshua Wallace's statement of only "hearing" the shooting, not seeing it. The officers are entitled to Qualified Immunity. An inconsistent affidavit of a child filed two-and-a-half years later accusing the officers of executing his father should be disregarded.

## II.    <u>QUALIFIED IMMUNITY</u>

The pivotal issue in this case is whether the inconsistent affidavit of Joshua Wallace creates a genuine issue of material fact. If the Court accepts the Defendants' position that it does not, then qualified immunity is readily found.

Qualified immunity completely "protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730 at 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)); *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006).

The purpose of qualified immunity "is to allow government officials to carry

18

APPEAL NO. 16-11403

out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted). Indeed, as the Supreme Court recently held in *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), "[q]ualified immunity is 'an ***immunity from suit*** rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" 550 U.S. 372, 376 n.2 (2007) (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, qualified immunity should be resolved "at the earliest possible stage of litigation." *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

To be entitled to qualified immunity, "the public official must show that he was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred." *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2003) (citing *Lee*, 284 F.3d at 1194). An official acts within the scope of his discretionary authority when his conduct is undertaken pursuant to the performance of his official duties. See *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).

The St. Petersburg Police Officers faced imminent threat of death or serious injury. They were quickly forced to resort to deadly force. They are entitled to qualified immunity.

19

APPEAL NO. 16-11403

*Riordan v. O'Shea, 448 Fed.Appx. 928* (11th Cir. 2011) is instructive.   In

*Riordan* an officer was dispatched to a call of a dispute with a gun involved.  *Id.* at

929.  At the scene, the officer saw the suspect running toward him with a shiny object

in his hand, which appeared to be a tire tool.  *Id.*  It turned out to be a wooden spindle.

*Id.*  The suspect was yelling he was going to kill the officer.  Without a warning or

identifying himself as an officer, the officer shot the suspect from a distance of

approximately fifteen feet away, killing him. *Id.* at 930.

The Eleventh Circuit explained that in order to determine whether the

defendant is entitled to qualified immunity a court must determine: 1) whether the

defendant's conduct violated the plaintiff's constitutional rights; and 2) whether the

right was clearly established.  *Id.*

Excessive force is a judged under a Fourth Amendment reasonableness

standard.  *Id.*, citing to *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Factors to be

considered are whether the suspect threatened the officer with a weapon and posed

a threat of serious harm.  *Id.* at 931.  Thus in *Riordan* the officer's actions were

reasonable because he knew the suspect had a gun earlier.  The suspect then

threatened the officer with what appeared to be a weapon.  The officer was entitled

to qualified immunity.  *Id.* at 931.

Interestingly, there was a factual dispute regarding how much time elapsed.

The Court found the plaintiff's testimony "too equivocal to create a disputed issue

20

APPEAL NO. 16-11403

of fact." *Id*. at n.2.

In the present case the officers, like in *Riordan*, knew that a gun was involved in the dispute.  Unlike *Riordan* however, Sexton actually pointed a loaded 9mm handgun at Officer Mangiaracina, an officer.  This strongly compels a finding of qualified immunity.  Also, unlike in *Riordan*, the officers here gave multiple warnings to stop reaching for the gun.  This also factors in to a finding of qualified immunity.  *Id.* at 931.

In *Penley v. Eslinger,* 605 F. 3d 843 (11th Cir. 2010) suit was brought over the fatal shooting of a 15-year-old student.  The student had modified a plastic pistol to look like a real gun.  School officials called the police.  During a stand-off the boy pointed his gun directly at the officer.  While negotiations were ongoing, an officer shot and killed the student.

The 11th Circuit, citing to the Supreme Court, noted that reasonableness must make allowance for the fact that police officers are forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving.  *Id.* at 850, citing to *Graham v. Connor*.  The Court noted that the reasonableness analysis turned on the presence of an imminent threat.  *Id.* at 850-51.

Non-compliance involving a gun supports the conclusion that deadly force is reasonable.  *Id.* at 851.  Ultimately the officers were entitled to qualified immunity. *Id.* at 854.

21

APPEAL NO. 16-11403

Here, the record shows that Sexton's actions were even more egregious.

Sexton failed to comply, instead reaching for his right front pocket.  He retrieved a loaded gun and pointed it at an officer.  There is absolutely no precedent for a finding that the use of deadly force in that situation is a constitutional violation.  As such the officers are entitled to qualified immunity.

In *Lenning v. Brantley County, Ga.,* 579 Fed.Appx. 727 (11th Cir. 2014) a long stand-off ended with a trooper shooting the plaintiff in the head.

The Eleventh Circuit discussed qualified immunity first finding it clear that the police officer was acting in his discretionary authority.  *Id.* at 731.

The excessive force is then analyzed on a Fourth Amendment reasonableness standard.  The officers, as in the present case, observed Lenning commit a life-threatening offense:  aiming his gun at the officer.  *Id*. at 732.  The use of deadly force in response to this conduct was "objectively reasonable".  *Id*.  This reasonable action took place in a split second.

The same result is dictated here.  Officer Mangiaracina faced the barrel of the Plaintiff's loaded 9mm, as everything happened at "light speed".  Sexton, having threatened his neighbors earlier, ignored repeated commands to freeze and not reach for his right front pocket.  For reasons known only to Sexton he grabbed the gun and pointed the barrel at Officer Mangiaracina.  The officer Defendants acted in an objectively reasonable manner by resorting to deadly force in the face of the threat

22

of deadly force.

In *Garczynski v. Bradshaw*, 573 F.3d 1158 (11th Cir. 2009) the plaintiff was told repeatedly to "put the gun down". Instead the plaintiff pointed it at the officer. *Id.* at 1164. At that point multiple officers fired a total of thirty shots. *Id.* The plaintiff was found to have a loaded 9mm handgun which had not been fired.

The Eleventh Circuit found that there was no constitutional violation. The Court noted that the facts of such cases are often tense and rapidly evolving. *Id.* citing to *Graham*. This requires split-second judgments. "Because an officer's perspective in the field differs from that of a judge sitting peacefully in chambers, we must resist the temptation to judge an officer's actions 'with the 20/20 vision of hindsight.'" *Id.*

The Court continued:

> Instead of obeying these commands, Garczynski swung the gun from his head in the direction of the officers, at which point they fired. The officers reasonably reacted to what they perceived as an immediate threat of serious harm to themselves.

*Id.* at 1168.

For all intents and purposes, *Garczynski* is identical to the present matter. The Defendants are entitled to qualified immunity.

In *Quiles v. City of Tampa Police Dept.*, 596 Fed.Appx. 816 (11th Cir. 2015) the officer was entitled to qualified immunity for shooting Quiles who the officer

23

had reasonably but mistakenly believed had stolen the officer's gun.

In *McCullough v. Antolini*, 559 F.3d 1201 (11th Cir. 2009) the decedent disobeyed a police command to pull over, led police on a high speed chase, when finally pulling over refused to show his hands and drove a truck in the direction of a sheriff's deputy. This was a "rapidly unfolding scenario." *Id.* at 1201-02. Officers fired through the truck window killing McCullough.

The Court noted that the mere existence of a factual dispute does not preclude summary judgment on the basis of qualified immunity. *Id.* at 1202, citing to *McDaniel v. Woodard*, 885 F.2d 311, 313 (11th Cir. 1989).

The Court held that in deference to the split-second police judgments in the field, as well as prior precedent, the officers were entitled to qualified immunity. *Id.* 1208.

The relevant case law is overwhelming and compelling that Officers Mangiaracina, Morales and Romano are entitled to qualified immunity. The Plaintiff will show no binding precedent establishing a constitutional violation under these circumstances.

## <u>CONCLUSION</u>

To force the three Defendant police officers to go to trial over what is essentially the wishful thinking of a child is not right legally or factually.

There is no genuine issue of material fact. The Defendant officers are

24

APPEAL NO. 16-11403

entitled to Qualified Immunity.

APPEAL NO. 16-11403

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance With Type-Volume Limitation, Typeface

Requirements, and Type Style Requirements:

1.  This brief complies with the type-volume limitation of Fed.R.App.P.

32(a)(7)(B) because this brief contains 5,378 words, excluding the parts of the

brief  exempted by Fed.R.App.P. 32(a)(7)(B)(iii); and

2. This brief complies with the typeface requirements of Fed.R.App.P.

32(a)(5)  and the type style requirements of Fed.R.App.P. 32(a)(6) because this

brief has been  prepared in a proportionally spaced typeface using Microsoft®

Word 2013 in  Times New Roman 14-point font.


## **CERTIFICATE OF ELECTRONIC FILING**

Pursuant to Eleventh Circuit Rule 31-5, the Appellants have provided the

Court  with an electronic copy of the foregoing brief in Adobe Acrobat PDF format

and have  uploaded the brief to the Court's website at www.ca11.uscourts.gov.

APPEAL NO. 16-11403

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Appellants' Initial Brief was electronically filed and furnished by ECF and U.S. Postal Mail to Michael P. Maddux, Esquire, Michael P. Maddux, P.A., 2102 West Cleveland Street, Tampa, Florida 33606, mmaddux@madduxattorneys.com, and Jennifer M. Salter, Esquire, Michael P. Maddux, P.A., 1601 N.W. 80th Blvd., Gainesville, FL 32606, jsalter@madduxattorneys.com, on this 20th day of May, 2016.

OFFICE OF THE CITY ATTORNEY
FOR THE CITY OF ST. PETERSBURG


By:    /s/ Joseph P. Patner
       JOSEPH P. PATNER
       FBN: 831557
       Attorney for Defendants
       Assistant City Attorney
       P. O. Box 2842
       St. Petersburg, Florida 33731
       (727) 893-7401
       FAX: (727) 892-5262
       Joseph.Patner@stpete.org
       eservice@stpete.org

27