APPEAL CASE NO: 16-11403

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

OFFICER NICOLO MANGIARACINA, individually
and as a member of St. Petersburg Police Department;
OFFICER JUSTIN MORALES, individually
and as a member of St. Petersburg Police Department;
OFFICER MICHAEL ROMANO, individually and as
a member of the St. Petersburg Police Department;
CHIEF ANTHONY HOLLOWAY,
St. Petersburg Police Department Chief,
in his official capacity,
CITY OF ST. PETERSBURG d/b/a
CITY OF ST. PETERSBURG POLICE DEPARTMENT,

    Appellants/Defendants,

 vs.

BRANDY WALLACE, as the Personal Representative
of the Estate of Ronald Wesley Sexton,

    Appellee/Plaintiff,

_____/

ON APPEAL FROM THE DISTRICT COURT OF
THE MIDDLE DISTRICT OF FLORIDA

_____

### APPELLANTS' REPLY BRIEF
_____

Respectfully submitted,

JOSEPH P. PATNER, ESQUIRE
Assistant City Attorney
Florida Bar No.: 831557
OFFICE OF THE CITY ATTORNEY
FOR THE CITY OF ST. PETERSBURG
P. O. Box 2842
St. Petersburg, Florida 33731
(727) 893-7401, Fax: (727) 892-5262
Joseph.Patner@stpete.org
eservice@stpete.org

APPEAL NO. 16-11403

# **TABLE OF CONTENTS**

Table of Contents ................................................................................ i

Table of Citations ............................................................................... ii

Argument ........................................................................................... 1

    Joshua Wallace's Affidavit Does Not Create a Genuine Issue
    of Material Fact .............................................................................. 1

        A. Joshua Wallace is Neither Reliable Nor Credible ................... 1

        B. Joshua Wallace's Numerous Inconsistent Statements Do Not
        Create a Genuine Issue of Material Fact. ..................................... 2

            1. Joshua Wallace Contradicts Two Adult Neighbors ........... 3

            2. Joshua Wallace Contradicts Himself as to Material Facts  3

            3. Joshua Wallace Contradicts Every Police Officer. ............. 4

        C. No Reasonable Jury Could Believe Joshua Wallace .............. 4

Conclusion ......................................................................................... 5

Certificate of Compliance with Rule 32(a) ....................................... 7

Certificate of Electronic Filing ......................................................... 7

Certificate of Service ........................................................................ 8

# **TABLE OF CITATIONS**

*Chadwick v. Bank of America*
616 Fed. Appx. 944, n.3 (11th Cir. 2015) ........................................................ 5

*Eddings v. Oklahoma*
455 U.S. 104, 115-116 (1982) ......................................................................... 2

*J.D.B. v. North Carolina*
564 U.S. 261, 272 (2011) ................................................................................ 2

*Jones v. Michael, et al.*
15-14713 (11th Cir. July 7, 2016 ..................................................................... 1

*Kenning v. Carli*
2016 WL 1534002 (11th Cir. 2016) ................................................................ 5

*McMullen v. Wakulla County Board of County Commissioners*
2016 WL 3002286 (11th Cir. 2016) ................................................................ 5

*Roper v. Simmons*
543 U.S. 551, 569 (2005) ................................................................................ 2

*Scott v. Harris*
127 S. Ct. 1769, 1776 (2007) ...................................................................... 1, 5

*Word v. AT&T*
576 Fed. Appx. 908, 912 (11th Cir. 2014) ...................................................... 5

## ARGUMENT

**Joshua Wallace's Affidavit Does Not Create a Genuine Issue of Material Fact.**

Ten-year-old Joshua Wallace is an alleged witness. His prepared affidavit contradicts his own prior statements and all other evidence in the case. Joshua's assertion, that multiple police officer conspired to murder Joshua's father while he was unarmed, is blatantly contradicted by the record such that no reasonable jury could believe it. Thus no court should adopt that version of the facts. See, *Jones v. Michael, et al.,* 15-14713 (11th Cir. July 7, 2016), citing to *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

### A. Joshua Wallace is Neither Reliable Nor Credible.

Plaintiff, Sexton, concedes that Joshua Wallace can be manipulated. (Plaintiff, Sexton's, Answer Brief, p. 6). This would account for the fiction of Joshua Wallace's prepared affidavit.

Plaintiff, Sexton, further suggests that Joshua Wallace was in a state of "overawe" and "overwhelm" following the death of his father. (Plaintiff, Sexton's, Answer Brief, p. 7). This accounts for the child's varying versions of what he saw, if he in fact saw anything.

The Defendants/Appellants agree with the Plaintiff, Sexton's, position that children may not provide an accurate portrayal due to a child's perceptions.

1

(Plaintiff, Sexton's, Answer Brief, p. 6-7). A child cannot be compared to an adult. (Plaintiff, Sexton's, Answer Brief, p. 7).

Children are less mature and responsible than adults. *J.D.B. v. North Carolina*, 564 U.S. 261, 272 (2011), citing to *Eddings v. Oklahoma*, 455 U.S. 104, 115-116 (1982). Children lack perspective and judgment, and are more vulnerable to outside pressures. *J.D.B.* at 272, citing to *Roper v. Simmons*, 543 U.S. 551, 569 (2005). There would, of course, be no greater pressure on a child than what is perceived a child's mother may want to believe about the death of a child's father.

The law has historically reflected that children lack the capacity to exercise mature judgment. *J.D.B.* at 273.

Given what the Plaintiff, Sexton, asserts and concedes regarding child witnesses, no reasonable jury could accept Joshua Wallace's varying statements and affidavit over that of multiple adults.

**B. Joshua Wallace's Numerous Inconsistent Statements Do Not Create a Genuine Issue of Material Fact.**

Ten-year-old Joshua Wallace's statements are figuratively "all over the map". Plaintiff, Sexton, spends much of his Answer Brief attempting to get the Court to ignore Joshua's statements to Internal Affairs precisely because they are so inconsistent. (See Plaintiff, Sexton's, Answer Brief, p. 5 – 9).

2

**1. Joshua Wallace Contradicts Two Adult Neighbors.**

Joshua Wallace describes in his affidavit that he observed the encounter between his father and the neighbors. Joshua states that his father never produced a gun. (Doc. 42-1, Supplemental Appendix p. 4). This is directly contradicted by the two neighbors Sexton confronted with a gun, Andrea Robinson and Cedric Warren.

Andrea Robinson, the next door neighbor, observed Sexton cocking the gun while he displayed it. (Doc 37-1, p. 20:10-15). This is, of course, consistent with the fact that Sexton's gun was found loaded. (Doc 37-5, p. 39:1-5).

Ms. Robinson's companion, Cedric Warren, saw Sexton pull a gun on him while arguing about their dogs. (Doc 37-1, p. 12:9-21).

To give credence to the ten-year-old Joshua Watson is to disbelieve two adult non-party witnesses.

**2. Joshua Wallace Contradicts Himself as to Material Facts.**

Joshua Wallace originally told Detective Kenneth Miller he saw the shooting when he opened the front door. This is followed by a recorded sworn statement whereby ten-year-old Joshua Wallace claims he saw the shooting through the window of the house. The detective confronts him on this point and Joshua then reverts to stating that he saw the shooting from the door "and then I got scared and ran back in." (Doc. 50-1, p. 6, Supplemental Appendix p. 41 of 61).

Joshua, in a sworn statement to Internal Affairs following the incident

3

admitted he did not see the shooting, he was running to get his mom when he heard gun shots. (Doc 37-4, pg. 4:18-24, 5:19).

In denying witnessing the shooting, Joshua stated he was in his mom's room, listening through duct tape on the window. (Doc 37-4, p. 10:5-10). Joshua contradicted this by stating he was halfway down a hallway, getting his mom when the shooting occurred. (Doc. 37-4, p. 12:14-25).

### 3. Joshua Wallace Contradicts Every Police Officer.

Ronald Sexton pulled a gun on his neighbors during an argument causing the neighbors to call 911. During an encounter with the police officers, Sexton drew his loaded 9mm and pointed it at Officer Mangiaracina. This caused all officers to react to save Officer Mangiaracina from death or great bodily injury. (Doc. 37-2, p. 23:9-14; 24:2-6; p.24:14-17). (Doc 37-3, p. 33:22-24; 37-5, p. 17:20-24; 18:1-2).

Alternatively, Joshua Sexton, who according to the Plaintiff can be manipulated and overwhelmed, in at least one version says his dad was unarmed when shot. (Doc. 42-1, ¶ 17). The District Court found that directly after the shooting Joshua was "equivocal" about whether he had actually seen the shooting. (Doc. 51, p. 6).

### C. No Reasonable Jury Could Believe Joshua Wallace.

To believe 10-year-old Joshua Wallace's affidavit, one would have to disbelieve:

4

1. Every police officer on scene;

2. The two adult neighbors who called 911.

3. Joshua Wallace's earlier statements.

It would also require belief that multiple police officers risked their careers and lives to conspire to murder a man they had never met before.

No reasonable jury would believe the fairy tale Joshua Wallace has propagated or been manipulated into believing. Such vague, self-serving testimony, when blatantly contradicted by the record, should not be adopted to defeat a motion for summary judgment. *Chadwick v. Bank of America,* 616 Fed. Appx. 944, n.3 (11th Cir. 2015), citing to *Scott v. Harris*. See also *McMullen v. Wakulla County Board of County Commissioners*, 2016 WL 3002286 (11th Cir. 2016); *Kenning v. Carli*, 2016 WL 1534002 (11th Cir. 2016).

Joshua Wallace's testimony is inherently implausible and blatantly contradictory and thus this Court is not required to credit the evidence in favor of Sexton. *Word v. AT&T*, 576 Fed. Appx. 908, 912 (11th Cir. 2014).

## **CONCLUSION**

Defendant, City of St. Petersburg, would concede that under Joshua Wallace's contradictory fantasized account, the officers would not be entitled to Qualified Immunity for their cold-blooded murder of unarmed Ronald Sexton.

Conversely, surely the Plaintiff Sexton would agree that the officers would be

5

entitled to Qualified Immunity under the adults' uncontradicted version of events.

It flies in the face of the purpose and intent of Qualified Immunity to force these officers to go to trial, based upon this record. Officer Mangiaracina, Officer Morales and Officer Romano did nothing more than respond to a 911 call after a drunken Ronald Sexton pulled a gun on Cedric Warren and his girlfriend. His actions from that point forced the officers, in a split-second, to take action to avoid one of their own from becoming another statistic.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1. This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 1,100 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii); and

2. This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2013 in Times New Roman 14-point font.

## CERTIFICATE OF ELECTRONIC FILING

Pursuant to Eleventh Circuit Rule 31-5, the Appellants have provided the Court with an electronic copy of the foregoing brief in Adobe Acrobat PDF format and have uploaded the brief to the Court's website at www.ca11.uscourts.gov.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Appellants' Reply Brief was electronically filed and furnished by ECF and U.S. Postal Mail to Michael P. Maddux, Esquire, Michael P. Maddux, P.A., 2102 West Cleveland Street, Tampa, Florida 33606, mmaddux@madduxattorneys.com, and Jennifer M. Salter, Esquire, Michael P. Maddux, P.A., 1601 N.W. 80th Blvd., Gainesville, FL 32606, jsalter@madduxattorneys.com, on this 21st day of July, 2016.

        OFFICE OF THE CITY ATTORNEY
        FOR THE CITY OF ST. PETERSBURG

        By:    /s/ Joseph P. Patner
                JOSEPH P. PATNER
                FBN: 831557
                Attorney for Defendants
                Assistant City Attorney
                P. O. Box 2842
                St. Petersburg, Florida 33731
                (727) 893-7401
                FAX: (727) 892-5262
                Joseph.Patner@stpete.org
                eservice@stpete.org